Elizabeth BELLUS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. C 93–1524 FMS.

United States District Court,
N.D. California.

Oct. 2, 1995.

Richard H. Foster, Salinas, CA, for Plaintiff.

David L. Denier, Jay R. Weill, U.S. Attorney's Office, Tax Division, San Francisco, CA, for Defendant.

## ORDER (1) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION; AND (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

### ISSUES

Pending before the Court are plaintiff's motion for reconsideration and defendant's motion for summary judgment. These motions require the Court to determine 1) whether the Court's previous 1993 Order should be reconsidered; 2) whether plaintiff or Kenneth J. Wooler is responsible for third quarter 1989 F.I.C.A. and withholding taxes and F.U.T.A. taxes for the year ending December 31, 1989; and 3) whether plaintiff or the Trustee of Bellus' estate is liable for the unpaid F.I.C.A., withholding, and F.U.T.A. taxes.

### INTRODUCTION

This is an action pursuant to 28 U.S.C. § 1346 for the recovery of federal taxes alleged to be erroneously assessed and collected by the Internal Revenue Service (IRS).

On November 5, 1993, Elizabeth Bellus ("plaintiff") brought a motion for summary judgment on the ground that she was not responsible for unpaid employment taxes because she was not the employer during the periods the taxes were assessed. The United States ("defendant") opposed plaintiff's motion and filed a cross-motion for partial summary judgment with respect to the tax quarter ending June 30, 1989. In an order of referral filed by the Court on December 6, 1993, plaintiff's motion was denied and defendant's cross-motion was granted.

On June 30, 1995, defendant filed this motion for summary judgment on the ground that plaintiff is liable for unpaid F.I.C.A. and withholding taxes for the quarter ended September 30, 1989 and for unpaid F.U.T.A. taxes for the year ended December 31, 1989.

On July 12, 1995, plaintiff brought this motion to reconsider plaintiff's previously denied motion for summary judgment pursuant to Federal Rule of Civil Procedure 60(b).

## BACKGROUND

Plaintiff operated Light Rail Plastics Manufacturing Company ("Light Rail"). On May 30, 1989, Bellus dba Light Rail filed a voluntary petition for bankruptcy under chapter 11 of the Bankruptcy Code. Pursuant to that petition, plaintiff continued to operate Light Rail as a debtor-in-possession.

Plaintiff entered into an agreement with Kenneth J. Wooler on behalf of Kenneth J. Wooler Enterprises ("Wooler") on June 16, 1989. The agreement provided, among other things, that Light Rail would continue production in exchange for a monthly service fee. The agreement also required Light Rail to provide evidence of all payments of employee wages, employee withholding taxes, and employee taxes to Wooler within five business days of payment. The agreement further provided that Wooler had sole discretion to advance funds to Light Rail to cover costs of production. Any such advances would reduce the amount of the monthly service fee.

On July 20, 1989, the Bankruptcy Court heard a motion brought by plaintiff to approve the arrangement between plaintiff and Wooler. Plaintiff's motion was denied. Thereafter, Wooler filed a motion seeking approval of the financing arrangements between plaintiff and Wooler. The motion was heard on August 9, 1989, and denied.

On August 21, 1989, the Bankruptcy Court entered an order converting plaintiff's chapter 11 case to a case under chapter 7 and appointing Edward M. Walsh ("Trustee") as the Trustee of the chapter 7 bankruptcy estate. The Trustee sought to recover for the estate all accounts receivable, or proceeds thereof, obtained by Wooler in the course of plaintiff's chapter 11 proceeding.

On December 29, 1989, the Bankruptcy Court issued its order releasing plaintiff from all dischargeable debts. Subsequently, Wooler sought reconsideration of the bankruptcy court's denial of his motion for approval of his arrangements with plaintiff, contending that he incurred substantial monetary damages in connection with his transactions with plaintiff. Wooler and the Trustee entered into a settlement agreement resolving this dispute. The settlement agreement was approved by order of the Bankruptcy Court on September 5, 1990.

Light Rail ceased business operations on or before the appointment of Edward M. Walsh as the Trustee of the chapter 7 bankruptcy estate. At no time after his appointment did the Trustee operate the business. No one was employed by Light Rail after the Trustee's appointment. Nor did the Trustee pay any wages to employees of Light Rail for work performed after his appointment.

The Trustee did not file Employer's Quarterly Federal Tax Returns (Form 941) for the second or third quarter of 1989. Nor did he file an Employer's Annual Federal Unemployment (F.U.T.A.) Tax Return (Form 941) for the 1989 tax year. Further, the Trustee did not pay any of the unpaid F.I.C.A., withholding, or F.U.T.A. taxes incurred by Light Rail prior to or during the pendency of the chapter 11 proceeding.

On December 30, 1991, the IRS made assessments against plaintiff with respect to the Employer's Quarterly Federal Tax Returns (Form 941) of Light Rail for the second and third quarters of 1989 in the amounts of

$17,047.39 and $11,143.14, respectively. The present assessed balances due for the second and third quarters of 1989 are $16,675.93 and $1,372.71, respectively. No assessments were made against the bankruptcy estate of Elizabeth Bellus with respect to these tax liabilities.

On April 6, 1992, the IRS made an additional assessment against plaintiff with respect to the F.U.T.A. Tax Return (Form 940) for Light Rail for the 1989 tax year in the amount of $2,205.26. The present assessed balance due is $2,766.61. No assessment was made against the bankruptcy estate of Elizabeth Bellus with respect to this tax liability.

In July 1992, plaintiff made three payments of $250 each toward the above assessments. On September 21, 1992, the IRS notified plaintiff that it was charging her with a penalty under 26 U.S.C. § 6721 for failure to file forms W–2 with respect to Light Rail for the tax year 1989. Plaintiff responded that she had reasonable cause for her failure to file W–2 forms because all the business records for Light Rail were within the physical possession of the Trustee. On December 23, 1992, the IRS reversed its determination to impose a penalty under 26 U.S.C. § 6721.

On April 23, 1993, plaintiff brought this action to recover a refund for the payments she made on the ground that she was not the employer during the periods the taxes were assessed and is, thus, not responsible for the taxes.

## DISCUSSION

### I. Legal Standards.

#### A. Summary Judgment

In order to withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. Fed.R.Civ.P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In the absence of such facts, "the moving party is

entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In opposing summary judgment, plaintiff is not entitled to rely on the allegations of his complaint. *See* Fed.R.Civ.P. 56(e). Furthermore, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir.1982). Rule 56 provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts [that would be admissible as evidence] showing that there is a genuine issue for trial. . . ." Fed.R.Civ.P. 56(e).

#### B. Reconsideration

Federal Rule of Civil Procedure 60(b) governs the reconsideration of final orders. It is within the "sound discretionary power" of a district court to reconsider a judgment. *Taylor v. Knapp*, 871 F.2d 803 (9th Cir.), *cert. denied*, 493 U.S. 868, 110 S.Ct. 192, 107 L.Ed.2d 146 (1989). To justify reconsideration of an order, parties often come forward with new evidence. In order for evidence to be considered "newly discovered" for the purpose of Rule 60(b), it must meet three requirements: (1) the evidence must be of such a character that it would change the outcome of the Court's prior decision, *Fernhoff v. Tahoe Regional Planning Agency*, 622 F.Supp. 121, 122 (D.Nev.1985); (2) the evidence must have been undiscovered at the time of the Court's original decision, *Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir.1963), *cert. denied*, 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964); and (3) the evidence must not have been discoverable through the exercise of reasonable diligence by the moving party, *Shiley, Inc. v. Bentley Lab., Inc.*, 115 F.R.D. 169, 170 (C.D.Cal. 1987).

██ Reconsideration of an order may also be justified in the face of a clear error of law by the Court or to prevent manifest injustice. To demonstrate clear error, the moving party's arguments cannot be the same as those made earlier. *Backlund v. Barnhart,* 778 F.2d 1386, 1388 (9th Cir.1985). If a party simply inadvertently failed to raise the arguments earlier, the arguments are deemed waived. *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985).

## II. Plaintiff Has Not Produced Any New Evidence and Has Not Shown Any Clear Error of Law.

Plaintiff's motion for reconsideration asks the Court to reconsider its order of referral filed December 6, 1993, granting the United States' cross-motion for partial summary judgment with respect to the withholding and F.I.C.A. taxes for the second quarter of 1989. Plaintiff claims that, until June 1995, her attorney was under the impression that all employee wages were paid by plaintiff through the Light Rail account during the second quarter of 1989; however, no wages were paid by plaintiff or Light Rail and neither plaintiff nor any employee of Light Rail had the right to cash checks for the payment of wages. Bellus Decl. ¶ 6. Plaintiff further claims that "from the time of the filing of the Petition in Bankruptcy on May 30, 1989 under Chapter 11 of the Bankruptcy Code until the Bankruptcy Court converted the case to a Chapter 7 Kenneth Wooler [sic] Enterprises was in complete charge of the business." *Id.* at ¶ 1.

██ Although it appears that the parties' attorneys and the Court were unaware of the extent of Wooler's control over Light Rail when the original motions were submitted and the Court's order was filed in 1993, plaintiff has not presented sufficient grounds for the Court to grant her motion for reconsideration. Plaintiff's evidence cannot be considered "newly discovered evidence" under Federal Rule of Civil Procedure 60(b). First, evidence of Wooler's considerable control of Light Rail would not change the outcome of the Court's prior decision. Despite Wooler's actual practice of paying wages, such payment does not change the Court's finding that Wooler did not have *legal* control over the payment of wages, and thus, Wooler is not liable under 26 U.S.C. § 3401(d). *See* Order of Referral, December 6, 1993, p. 6.

Second, Wooler's actual payment of wages could have been discovered by plaintiff's attorney through the exercise of due diligence. Plaintiff has always maintained that Wooler was in "complete charge" of Light Rail from June 1993 until the Bankruptcy Court converted the case under chapter 7, but she allegedly did not make clear to her attorney that wages were paid directly from Wooler's account. Bellus Decl. ¶ 1, 10. Given that control of wages is crucial to determining liability in this action, it is reasonable to expect plaintiff to provide to her attorney information regarding who controlled the payment of wages and to conclude that her attorney would seek this information out as well. Given that the outcome of the Court's prior decision would not change and that the evidence submitted in support of reconsideration could have been discovered with reasonable diligence before the Court made its decision, plaintiff's motion for reconsideration is denied.

Furthermore, reconsideration in this case cannot be granted because the arguments regarding Wooler's liability were essentially the same as those made by plaintiff before the December 6, 1993 order. Plaintiff's arguments concerning the Trustee's liability raised in support of this motion for reconsideration were also made before the Court made a final judgment regarding liability for second quarter of 1989 taxes.

## III. Plaintiff, not Wooler, is Liable for Unpaid F.I.C.A. and Withholding Taxes for the Third Quarter of 1989 and Unpaid F.U.T.A. Taxes for the Year Ending December 31, 1989.

██ Plaintiff argues that Wooler is liable for F.I.C.A. and withholding taxes for the third quarter of 1989. Plaintiff contends that Wooler could be defined as the "employer" of Light Rail,[1] and thus is liable for third

---

1. Section 3401(d) (concerning the withholding of taxes) defines "employer" as "the person for

quarter taxes because he had "complete control" of wages from May 30 to August 21, 1989. Plaintiff's argument, however, is without merit.

Plaintiff contends that under the agreement between Wooler and plaintiff, Wooler, rather than plaintiff, was the "employer" of Light Rail. Plaintiff claims that not only was Wooler entitled to Light Rail's accounts receivable and advancing money to Light Rail, but that Wooler actually paid the wages to Light Rail employees. According to plaintiff, this degree of control made Wooler liable under section 3401(d).

Plaintiff's argument is groundless for the same reasons that the Court set forth in determining that plaintiff's arguments for her previous motion for summary judgment with respect to taxes for the second quarter of 1989 were flawed. *See* Order of Referral, December 6, 1993, p. 6–8. First, the written agreement between plaintiff and Wooler provided that "[e]vidence of all payments of employee wages, employee withholding taxes, and employee taxes shall be furnished by Light Rail to K.J. Wooler Enterprises within five (5) business days of any such payment." Exhibit B. Under the agreement and under common law, therefore, plaintiff clearly had legal control of the payment of wages.

Although Wooler actually paid the wages, plaintiff is nonetheless primarily responsible for the payment of third quarter 1989 taxes. "No one other than the person who has control of the payment of wages is in a position to make the proper accounting and payment to the United States." *In re Southwest Restaurant Systems, Inc.,* 607 F.2d 1237, 1240 (9th Cir.1979). Section 1621(d) of the Internal Revenue Code of 1939, the predecessor to section 3401(d), interpreted "control" over the payment of wages to mean

"legal control." *Century Indemnity Co. v. Riddell,* 317 F.2d 681, 686 (9th Cir.1963). Legal control means "the power to control the actual payment of wages rather than merely what actually may have been practiced by voluntary forbearance of the person actually having such legal power." *Id.* Wooler's actual payment of taxes was the result of plaintiff's "voluntary forbearance"; such forbearance did not change plaintiff's legal control over the payment of taxes. Wooler was not the "employer" and thus not liable for third quarter taxes.[2]

## IV. Plaintiff's Arguments that the Bankruptcy Estate, Not She, Is Liable for Unpaid Employment Taxes Incurred While She Was a Debtor-in-possession Are Unavailing.

 Plaintiff argues that the bankruptcy estate, not she, is responsible for employment taxes incurred while she was a chapter 11 debtor-in-possession. Plaintiff argues that this is so because: (1) the taxes were incurred by the bankruptcy estate, which is a separate entity; and (2) the IRS could have collected the taxes from the chapter 7 Trustee by filing a timely proof of claim. The Court finds plaintiff's arguments unpersuasive, and finds that plaintiff is responsible for unpaid employment taxes incurred while she was a debtor in possession.

### A. The Bankruptcy Estate Is Not a Separate Entity Liable for the Unpaid Employment Taxes.

Plaintiff filed her chapter 11 case as an individual. She conducted her business as a sole proprietorship using DBA. Thus, the post-petition tax liabilities she incurred are her responsibility unless an applicable provision of the Internal Revenue Code or Bank-

---

whom an individual performs or performed any service, of whatever nature, as the employee of such person." 26 U.S.C. § 3401(d) (1988). "[I]f the person for whom the individual performs or performed the service does not have control of the payment of the wages for such services," then "employer" means "the person having control of the payment of such wages." 26 U.S.C. § 3401(d)(1).

**2.** Section 3505 provides that a surety, lender, or other person who directly or indirectly pays an-

other's employees is secondarily liable for F.I.C.A. and withholding taxes. 26 U.S.C. § 3505 (1966). Under § 3505(a), a person is automatically liable for the employer's taxes if he directly pays the employees. Assuming that Wooler actually paid the Light Rail employees wages, Wooler could be secondarily liable for the unpaid third quarter taxes. This does not alter plaintiff's primary liability for the taxes as the "employer."

ruptcy Code provides that some separate entity is liable.

### 1. Internal Revenue Code

The Internal Revenue Code provides that an individual who files a case under chapter 11 is not responsible for the tax on income earned by the bankruptcy estate postpetition. 26 U.S.C. § 1398. However, a review of section 1398 makes clear that it applies only to income taxes of individuals. First, section 1398 is part of subtitle A of the Internal Revenue Code, which governs income taxes only. Contrastingly, employment taxes are governed by Subtitle C.

Second, all of the operative terms of section 1398 govern calculation of income taxes: section 1398 addresses standard deduction, taxable year, whether a transfer from debtor to the bankruptcy estate constitutes a sale or exchange, and whether the debtor or the estate get loss carryovers. Section 1398 does not address any issues related to employment taxes.

Third, the logic of treating the estate as a separate taxpayer applies only to income taxes of individuals. The creation of a separate entity is necessary because the postpetition personal service income of an individual debtor is not property of the bankruptcy estate and therefore cannot be taxed together with the prepetition income of the debtor. *See* 11 U.S.C. § 541(a)(6).

Because section 1398 applies only to income taxes, the bankruptcy estate is not a separate taxpayer for employment tax purposes. 26 U.S.C. § 1399 provides:

> Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a case under title 11 of the United States Code.

As such, nothing in the Internal Revenue Code shifts liability for post-petition taxes from plaintiff.

### 2. Bankruptcy Code

Similarly, the Bankruptcy Code does not provide that any separate entity is responsible for the unpaid taxes. Section 348 of the Bankruptcy Code provides that in a case that has been converted from chapter 11 to chapter 7, claims that arose during the chapter 11 case are *generally* treated as claims that arose against the debtor prepetition. Thus, a creditor may sue the debtor on a claim incurred by the debtor-in-possession, if that claim is nondischargeable under 11 U.S.C. § 523. The taxes at issue here are clearly nondischargeable under sections 523(a)(1)(A) and 507(a)(8)(C) of title 11 of the United States Code.

Title 11 U.S.C. § 348(d), however, contains an exception to this general rule for postpetition claims entitled to administrative priority, providing that:

> A claim against the estate or the debtor that arises after the order of relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, *other than a claim specified in section 503(b) of this title,*[3] shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

(Emphasis added). The taxes at issue here are administrative expenses. The question thus arises whether the above-highlighted language in section 348(d) precludes the IRS from enforcing its claim against plaintiff and permits the IRS to enforce its claim only against the chapter 7 estate. Although there are few published cases on point, those cases hold that Congress created the exception in section 348(d) solely to preserve the priority of administrative claims,[4] and that a debtor is liable for a nondischargeable claim incurred as debtor-in-possession. *See In re Pavlovich,* 952 F.2d 114, 118–19 (5th Cir.1992); *In re Ramaker,* 117 B.R. 959, 962–64 (Bankr. N.D.Iowa 1990). The Court finds these cases to be well reasoned and follows them. Thus, plaintiff is liable for the postpetition taxes.[5]

---

**3.** 11 U.S.C. § 503(b) defines the types of claims entitled to administrative priority.

**4.** Although most priorities are governed by the nature of the claim, administrative priority is

governed largely by when the claim arises. *See* 11 U.S.C. §§ 503(b), 507(a).

**5.** It should be noted that even if the bankruptcy estate is a separate entity and the chapter 7 estate is the "employer" liable under section

**800**

## B. The Internal Revenue Service's Failure to File a Claim Does Not Affect Plaintiff's Liability.

 Plaintiff argues that the Internal Revenue Service's failure to file a timely claim in the Bellus bankruptcy absolves her of liability. This argument is without merit.

■ As stated previously, the taxes at issue here are clearly nondischargeable under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(C). The statutory language of section 523(a)(1)(A) specifically allows the Internal Revenue Service's claim to be nondischargeable whether or not a claim is filed in the bankruptcy. Section 523(a)(1)(A) provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt
>> (1) for a tax or a customs duty—
>>> (A) of a kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, *whether or not a claim for such tax was filed or allowed.*

(Emphasis added). Courts have consistently enforced this provision. *See, e.g., In re Gurwitch,* 794 F.2d 584, 585–86 (11th Cir.1986); *In re Queen,* 148 B.R. 256, 258 (S.D.W.Va. 1992), *aff'd,* 16 F.3d 411, 1994 WL 12029 (4th Cir.1994); *In re Olsen,* 123 B.R. 312, 314 (Bankr.N.D.Ill.1991); *In re Kinney,* 123 B.R. 889, 891 (Bankr.D.Nev.1991). The remedy for a debtor who wishes a nondischargeable tax to be paid by the bankruptcy estate is to file a proof of claim on behalf of the IRS. Federal Rule of Bankruptcy Procedure 3004 permits the debtor to file a claim on behalf of a creditor and even grants the debtor extra time to do so.

■ Nor is the IRS estopped from collecting the tax from plaintiff personally because it failed to assert a claim in her bankruptcy case. The Court has found no case holding that the IRS is estopped for failure to file a claim. The Tenth Circuit addressed the estoppel issue in a similar context and

3401 of the Internal Revenue Code, plaintiff still cannot escape liability for the taxes. In that event, plaintiff would be personally liable for the taxes under § 6672 of the Internal Revenue Code as the "responsible person" for the bankruptcy estate. The same facts that led the Court to

held that the government can be estopped only on the basis of affirmative misconduct, not on the basis of mere failure to file a claim. *In re DePaolo,* 45 F.3d 373, 376–77 (10th Cir.1995). No misconduct is alleged here. As such, the IRS is not estopped from asserting its claim.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for reconsideration is DENIED, and defendants' motion for summary judgment is GRANTED.

SO ORDERED.

determine that plaintiff was the "employer" under § 3401 of the Internal Revenue Code, *see* Order of Referral, December 6, 1993, p. 6–8, would establish that plaintiff was the responsible person under § 6672.