In re William E. CALLAHAN, Jr.

**William E. Callahan, Jr., Trustee, Appellant,**

v.

**UMWA 1992 Plan, Appellee.**

**No. CIV.A. 1:03CV00116.**

United States District Court, W.D. Virginia, Abingdon Division.

Feb. 11, 2004.

William E. Callahan, Jr., Roanoke, VA, pro se.

Douglas Tod Stark, Magee, Foster, Goldstein & Sayers, Roanoke, VA, for Trustee.

John Ellsworth Kieffer, Bristol, VA, for Appellee.

Robert Tayloe Copeland, Copeland, Molinary & Bieger, Abingdon, VA, for Debtor.

### Memorandum Opinion

GLEN M. WILLIAMS, Senior District Judge.

## I. INTRODUCTION

This case is before the court on appeal from the decision of the United States Bankruptcy Court for the Western District of Virginia, (hereinafter, "Bankruptcy Court"). The Bankruptcy Court overruled the Trustee's objection to the administrative expenses claim filed by the United Mineworkers of America, (hereinafter, "UMWA"), 1992 Plan, and the Bankruptcy

Court allowed the administrative expenses claim of the UMWA 1992 Plan. (Memorandum Decision at 2.) The Appellant, William E. Callahan, Jr., (hereinafter, "Callahan"), contends that the Bankruptcy Court erred in holding that 26 U.S.C. § 1399 mandates the conclusion that the Chapter 7 bankruptcy estate of a debtor corporation is one and the same as the debtor itself. (Appellant's Brief at 1.) Callahan also asserts that the Bankruptcy Court erred in holding that the Chapter 7 bankruptcy estate's liability for Coal Act assessments arises from the debtor's pre-petition bankruptcy business activities. (Appellant's Brief at 11.) This court exercises appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1), and AFFIRMS the decision of the Bankruptcy Court.

## II. STANDARD OF REVIEW AND FACTS OF THE CASE

■ In reviewing the decision of the Bankruptcy Court, this court is obligated to use two standards of review. The court reviews all factual findings of the Bankruptcy Court under the "clear error" standard. *De novo* review is exercised as to matters of law. *In re Bullion Hollow Enterprises, Inc.*, 185 B.R. 726, 728 (W.D.Va.1995) (citing *In re Midway Partners*, 995 F.2d 490, 493 (4th Cir.1993)).

In this case, the parties have stipulated to the relevant facts, facts which this court will now reiterate. G & A Coal Company, Inc., (hereinafter "G & A") was a "last signatory operator" and a "1988 agreement operator," as those terms are defined in the Coal Industry Retiree Health Benefits Act, 26 U.S.C. §§ 9701 *et seq.*, (hereinafter, "Coal Act"). G & A signed a series of National Bituminous Coal Wage Agreements, including the 1988 National Bituminous Coal Wage Agreement and the 1998 National Bituminous Coal Wage Agreement. As of the time of the hearing be-

fore the Bankruptcy Court, five of the miners employed by G & A, and/or their eligible dependents, were receiving health benefit coverage from the UMWA 1992 Benefit Plan, (hereinafter, "1992 Plan"). These individuals were enrolled as beneficiaries of the 1992 Plan when G & A ceased providing such coverage in 2000.

G & A filed a voluntary petition for relief under the provisions of Chapter 11 of the Bankruptcy Code in the Bankruptcy Court on July 1, 1999. On August 8, 2000, the 1992 Plan filed an application for payment of administrative expenses, noting the continuing monthly premiums for coverage under the Plan. On August 20, 2000, by order of the Bankruptcy Court, the Chapter 11 Case was converted to a case under Chapter 7 of the Bankruptcy Code. Callahan was duly appointed and qualified as a Trustee of the Chapter 7 estate of G & A Coal Company, Inc.

Although the Trustee has taken the position that the Chapter 7 estate of the debtor is not an entity which is liable for assessments and premiums of the Coal Act, the parties stipulated to the calculation of the amount of premiums asserted by the Plan as being $19,926.50 for the Chapter 11 period (premiums for April 15, 2000, through August 15, 2000), and $109,291.65 for the Chapter 7 period (premiums for September 15, 2000, through February 15, 2003).

Under § 9712(d)(1)(A) of the Coal Act, certain responsible entities are also required to pay an annual premium, called a "prefunding premium." This premium is charged to all 1988 Agreement Operators, including those that continue to provide benefits for their retirees; it is incurred in January to fund the 1992 Plan for the calendar year. Under § 9712(d)(2)(B), the prefunding premium is adjusted to reflect changes in the cost of providing benefits to eligible beneficiaries for whom per benefi-

ciary premiums are not paid. The Plan asserted a claim of $5,050 in annual prefunding premiums for 2001, 2002 and 2003. Interest on these delinquent amounts at the statutory rate as referenced in § 9721 of the Coal Act, §§ 4301, 515 and 502(g)(2) of the Employee Retirement Income Security Act, (hereinafter, "ERISA"), 29 U.S.C. §§ 1451, 1145 and 1132(g)(2), was also claimed by the 1992 Plan in the Bankruptcy Court proceedings.

Under the Coal Act, the 1992 Plan is required to provide benefits as long as beneficiaries remain eligible. But for events such as minor children reaching the age of majority if they are not a full-time student, or surviving spouses remarrying, the 1992 Plan will be providing the health benefits for the retired miners and/or their eligible dependents, for their lifetimes, although this claim likely represents the 1992 Plan's last collections of any premiums related to these beneficiaries.

A total of 49 claims have been filed against the Chapter 7 estate of G & A, totaling $3,545,143.54.

### III. LEGAL DISCUSSION

As both parties to this matter and the Bankruptcy Court have noted, the question of whether the Coal Act assessments occurring during the Chapter 7 liquidation of a corporate debtor are entitled to priority status as an administrative expense of the Chapter 7 bankruptcy is a matter of first impression in the Fourth Circuit.

**A. The Bankruptcy Court did not err in holding that 26 U.S.C. § 1399 mandates the conclusion that the Chapter 7 bankruptcy estate of a debtor corporation is one and the same as the debtor itself.**

Callahan argues that the Bankruptcy Court erred in applying 26 U.S.C. § 1399, a provision of the federal revenue law, to substantive bankruptcy law. (Appellant's Brief at 3.)

Both parties agree that the Fourth Circuit has held that Coal Act premiums are "taxes." *Pittston Co. v. United States,* 199 F.3d 694, 702 (4th Cir.1999) *citing UMWA 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.),* 99 F.3d 573, 583 (4th Cir. 1996); *Adventure Resources, Inc. v. Holland,* 137 F.3d 786, 794 (4th Cir.1998) *cert. denied* 525 U.S. 962, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998); *Carbon Fuel Co. v. USX Corp.,* 100 F.3d 1124, 1133 (4th Cir. 1996). Under 11 U.S.C. § 503(b)(1)(B)(i), "any tax incurred by the estate" is deemed to be an administrative expense that is entitled to priority over claims of prepetition creditors when distributing the estate. As noted by the Bankruptcy Court in its Memorandum Decision entered on August 13, 2003, Callahan has not objected to the Plan's entitlement to Chapter 11 administrative expenses treatment for those obligations which accrued prior to conversion to an estate under Chapter 7; however, Callahan does object to those which have arisen since the conversion. (Memorandum Decision at 1.) Specifically, Callahan argues that, pursuant to 11 U.S.C. § 541(a), the commencement of a case in Bankruptcy Court creates an estate, which is a separate legal entity. (Appellant's Brief at 3.) *See In re Herberman,* 122 B.R. 273, 278–79 (Bankr.W.D.Tex. 1990). Callahan then argues that upon conversion of a Chapter 11 reorganization proceeding to a Chapter 7 liquidating case, that the estate is represented by the trustee, not the debtor-in-possession. (Appellant's Brief at 4–5.) *See In re Bunker,* 312 F.3d 145, 150 (4th Cir.2002); *In re Equipment Services, Inc.,* 290 F.3d 739, 745 (4th Cir.2002); *In re Hasset, Ltd.,* 283 B.R. 376, 381 (Bankr.E.D.N.Y.2002). Callahan notes that while the Bankruptcy Court

recognized the authorities that held that the Chapter 7 bankruptcy estate is a distinct entity, (Memorandum Decision at 5), the Bankruptcy Court applied 26 U.S.C. § 1399 to "obliterate the distinction." (Appellant's Brief at 5.)

 This court finds, however, that the Bankruptcy Court's application of 26 U.S.C. § 1399 was proper. Initially, the court notes that the Appellant's position is specifically contradicted by the direct language of § 1399 of the Internal Revenue Code. That section states: "Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a case under title 11 of the United States Code." 26 U.S.C. § 1399 [1]; *See also* Collier on Bankruptcy, ¶ TX3.02[2][b] (15th ed. Rev.) ("A separate taxable entity is not created upon (or as a result of) the commencement of a case by a corporation under the Bankruptcy Code."). In addition, the Bankruptcy Court's decision is in accord with relevant case law. *See In re L.J. O'Neill Shoe Co.,* 64 F.3d 1146, 1152 (8th Cir.1995) (stating "[w]e are not allowing the debtor to be 'taxed' as two separate entities ... [but] ... as one continuous corporate entity."); *In re Pacific–Atlantic Trading Co.,* 64 F.3d 1292, 1300 (9th Cir.1995) (stating that in bankruptcy, "[c]orporations, by contrast, are specifically precluded from creating two separate entities by declaring a short tax year."); *Hansen, Jones & Leta, P.C. v. Segal,* 220 B.R. 434, 453 (D.Utah 1998) (stating that "the Internal Revenue Code does not treat the estate as a separate taxable entity distinct from the prebankruptcy corporation. 26 U.S.C. § 1399. Under tax law, the corporation is the same taxable entity, only now in bankruptcy."); *In re Pine Knob Investment,* 20 B.R. 714,

716 (Bankr.Mich.1982) (stating "[t]he tax provisions of the Code were intended to eliminate disputes which had arisen regarding whether the estate of a debtor in bankruptcy was to be treated as a separate entity for tax purposes. As adopted they establish that the estate of a corporation or partnership is not a separate entity but is to be treated as though the case had not been commenced. This is consistent with pre-Code law and congressional intent as expressed in the legislative history.").

Callahan further argues that the legislative history of 26 U.S.C. § 1399 refutes the opinion of the Bankruptcy Court in this case. (Appellant's Brief at 6–7.) Callahan asserts that "[t]here is nothing in the legislative history of § 1399 to indicate that Congress intended to alter the clear provision of the Bankruptcy Code and published opinions interpreting it which recognize a Chapter 7 bankruptcy estate as an entity separate and distinct from the debtor." (Appellant's Brief at 6.) However, it appears that Callahan apparently failed to examine the entire legislative history. The Senate Report on this legislation states:

> The bill provides that no taxable entity results from commencement of a bankruptcy case involving a partnership or corporation. This rule (new Code sec. 1399) reverses current Internal Revenue Service practice as to partnerships, under which the estate of a partnership in bankruptcy is treated as a taxable entity ..., but is the same as a present law with respect to commencement of a bankruptcy case involving a corporation (Treas.Reg. § 1.641(b)–2(b)).... Also, the bankruptcy trustee of a corporation in a bankruptcy case, as under present law, must file annual income tax returns

---

**1.** The Bankruptcy Court held, and the parties agree, that § 1398 has no relevance to this case.

and pay corporate income tax for the corporation.

S. REP. No. 96–1053, 96th Cong.2d Sess (1980) at 25–26; S. REP. No. 96–1053, at 25–26 (1980) *reprinted in* 1980 U.S.C.C.A.N. 7017, 7040. As set out in the legislative history, § 1399 was enacted to codify the Internal Revenue Service's earlier rule that the bankruptcy estate of a corporation is not a separate taxable entity. Therefore, the language of 26 U.S.C. § 1399 and its legislative history lead to the conclusion that the bankruptcy estate is not a separate entity from the corporate debtor for tax purposes.

Callahan next asserts that 26 U.S.C. § 1399 applies only in the context of federal income taxes, and that other taxes, such as Coal Act premiums, do not fall within the purview of 26 U.S.C. § 1399. (Appellant's Brief at 6–7.) In support of this proposition, Callahan relies on two cases: *Bellus v. United States*, 198 B.R. 792, 799 (N.D.Cal.1995) and *In re Kiesner*, 194 B.R. 452, 458 (Bankr.E.D.Wis.1996). However, these cases only serve to bolster the opinion of the Bankruptcy Court in this case. The court in *In re Kiesner*, specifically stated, "[b]ecause no separate taxable entity is created for partnerships that file for bankruptcy under I.R.C. § 1399, the partners of [the partnership] continued to be liable for *all* taxes incurred by the debtor." *In re Kiesner*, 194 B.R. at 458–59 (emphasis added). Specifically, in *In re Kiesner*, *all taxes* included unemployment tax liabilities. The court in *Bellus*, stated that

the logic of treating the estate as a separate taxpayer applies only to income taxes of individuals. The creation of a separate entity is necessary because the postpetition personal service income of an individual debtor is not the property of the bankruptcy estate and therefore cannot be taxed together with the pre-

petition income of the debtor. *See* 11 U.S.C. § 541(a)(6).

Because section 1398 applies only to income taxes, the bankruptcy estate is not a separate taxpayer for employment tax purposes. 26 U.S.C. § 1399 provides: Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a case under Title 11 of the United States Code. As such, nothing in the Internal Revenue Code shifts liability for postpetition taxes from plaintiff.

*Bellus*, 198 B.R. at 799. The court in *Bellus* notes that in the case of an individual's bankruptcy, the commencement of a case in bankruptcy creates a separate taxable entity for income tax purposes only under 26 U.S.C. § 1398. In addition, the court in *Bellus* is equally clear in pointing out that in any case to which 26 U.S.C. § 1398 does not apply that a separate taxable entity is not created upon filing a case in bankruptcy for any type of tax. Such is the case before the court presently.

Callahan further asserts that the Bankruptcy Court's interpretation and application of 26 U.S.C. § 1399 violates a recently-reinforced rule of statutory interpretation. (Appellant's Brief at 8.) Specifically, Callahan argues that "[i]n the absence of any 'explicit connector' between the narrow provisions of § 1399 of the Internal Revenue Code and the provisions of the Bankruptcy Code, it is improper to simply assume, as the Bankruptcy Court did, that the Internal Revenue Code provision for a 'separate taxable entity' has the same, or, *any*, application to substantive bankruptcy law." (Appellant's Brief at 9.) However, this argument fails to pass muster when one reads the simple and unambiguous language included in the one sentence that makes up 26 U.S.C. § 1399. 26 U.S.C. § 1399 states: "Except in any

case to which section 1398 applies, no separate taxable entity shall result **from commencement of a case under title 11 of the United States Code.**" (Emphasis added). In reading the unambiguous language of 26 U.S.C. § 1399, it is simple to see that this section of the Internal Revenue Code specifically refers to the Bankruptcy Code; therefore, this section of the Internal Revenue Code has no meaning outside the context of the Bankruptcy Code. It is evident that Congress's intent, as evidenced in the language of 26 U.S.C. § 1399, was for 26 U.S.C. § 1399 to apply in substantive bankruptcy law.

Consequently, the Bankruptcy Court did not err in holding that 26 U.S.C. § 1399 mandates the conclusion that the Chapter 7 bankruptcy estate of a debtor corporation is one and the same as the debtor itself for tax purposes.

**B. The Bankruptcy Court did not err in holding that the Chapter 7 Bankruptcy Estate's liability for Coal Act assessments arises from the debtor's pre-petition bankruptcy business activities.**

Callahan asserts that although the Bankruptcy Court acknowledged that Coal Act assessments are "currently accruing obligations," (Memorandum Decision at 5), the Bankruptcy Court "viewed the Chapter 7 bankruptcy estate's liability as determined by the *pre-petition* business activity of the debtor." (Appellant's Brief at 11.) Callahan argues that "[t]his determination of liability is contrary to the specific language of the Bankruptcy Code which requires that an allowed administrative tax claim be 'incurred by the **estate**.' 11 U.S.C. § 503(b)(1)(B)(i)." (Appellant's Brief at 11.)

■ The court would like to note that the foundation of this argument is that the debtor and the bankruptcy estate are separate entities. As stated earlier, there is no question that Coal Act assessments are considered to be taxes in the Fourth Circuit. *See Pittston Co. v. United States*, 199 F.3d 694, 702 (4th Cir.1999) *citing UMWA 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573, 583 (4th Cir. 1996); *Adventure Resources, Inc. v. Holland*, 137 F.3d 786, 794 (4th Cir.1998) *cert. denied* 525 U.S. 962, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998); *Carbon Fuel Co. v. USX Corp.*, 100 F.3d 1124, 1133 (4th Cir. 1996). Based on the court's finding stated above that no separate taxable entity results from the commencement of a case under Title 11 of the United States Code involving a corporate debtor, 26 U.S.C. § 1399, this assertion by Callahan is easily dismissed. Since Coal Act assessments are taxes and these taxes were incurred by the debtor in this case, then these assessments were also incurred by the estate, because for tax purposes the estate and the debtor are not distinct entities. The case relied upon by Callahan in his brief, *In re Merry–Go–Round Enterprises, Inc.*, 180 F.3d 149 (4th Cir.1999), is easily distinguishable from the case at bar in that *In re Merry–Go–Round Enterprises, Inc.*, did not involve a tax claim, it involved a claim for past and future rent. *In re Merry–Go–Round Enterprises, Inc.*, 180 F.3d at 152.

■ There is no dispute that Coal Act assessments accrued during the post-petition period and were, therefore, based on the previous discussion, incurred by the estate. Therefore, these assessments are entitled to administrative expense treatment under 11 U.S.C. § 503(b)(1)(B)(i). The court would like to further note the decision of the 10th Circuit in *In re Sunnyside Coal Co.* 146 F.3d 1273 (10th Cir. 1998), that is on point to the issue that is

before this court. The 10th Circuit Court of Appeals noted:

> [T]hese arguments not only ignore the Coal Act but attempt to override its provisions with those of the Bankruptcy Code when, in fact, the two statutory schemes may be harmoniously construed. While the Trustee characterizes the conversion to Chapter 7 as a bright line after which no taxes can accrue against the estate, the Coal Act does not distinguish between a last signatory operator who remains in business and one who declares bankruptcy and "liquidates" the coal mining operation. In either case, Coal Act premiums accrue for each tax period.

*In re Sunnyside Coal Co.*, 146 F.3d at 1279. The 10th Circuit further stated: "We therefore hold Coal Act premiums are taxes incurred by the estate and entitled to administrative expense priority under § 503(b)(1)(B). These obligations will continue to accrue until the Trustee has liquidated all of [the coal company's] assets and submitted his final report." *In re Sunnyside Coal Co.*, 146 F.3d at 1280. Therefore, the 10th Circuit has held that Coal Act premiums are incurred by the Chapter 7 estate both pre-petition and post-petition. This court agrees with the 10th Circuit's holding in *In re Sunnyside Coal Co.* As a result, the Bankruptcy Court did not err in holding that the liability asserted by the Plan "does not arise from the activity undertaken by the Trustee other than having control of the bankruptcy estate; to the contrary, it arises solely from the Debtor's pre-petition bankruptcy business activities." (Memorandum Decision at 4.)

Callahan argues that "the Bankruptcy Court's allowance of the Plan's claim against the Chapter 7 bankruptcy estate is not supported by the specific statutory language used by Congress in the Coal Act to impose liability." (Appellant's Brief at

13.) There is no dispute that the Coal Act imposes liability on the Debtor as a last signatory operator and a 1988 agreement operator. *See* 26 U.S.C. § 9712(d)(1) & (3). As stated above, 26 U.S.C. § 1399 mandates that the bankruptcy estate is liable for the taxes of the Debtor because for tax purposes "no separate taxable entity shall result from the commencement of a case under Title 11." Therefore, 26 U.S.C. § 1399 operates to make the bankruptcy estate of a corporate debtor liable for the debtor's tax obligations, including Coal Act assessments. Also, there is nothing in the Coal Act that explicitly exempts a bankruptcy estate from Coal Act liabilities. Therefore, the decision of the Bankruptcy Court imposing liability for Coal Act assessments on the Chapter 7 estate was proper.

### C. The Bankruptcy Court relied on relevant law in deciding this case.

Finally, Callahan asserts that the decisions of *Adventure Resources, Inc. v. Holland,* 137 F.3d 786 (4th Cir.1998) *cert. denied,* 525 U.S. 962, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998), and *In re Sunnyside Coal Co.,* 146 F.3d 1273 (10th Cir.1998), are not controlling in this matter because those cases are distinguishable from the case at bar. (Appellant's Brief at 19.) The court first notes that the Bankruptcy Court's decision in this case primarily rests on the language of 26 U.S.C. § 1399. (Memorandum Opinion at 6–7.) *Adventure Resources* and *In re Sunnyside Coal Co.* both hold that a bankruptcy estate is liable for Coal Act Premiums. *Adventure Resources,* 137 F.3d at 794; *In re Sunnyside Coal Co.,* 146 F.3d at 1278. *Adventure Resources* arose in the context of a Chapter 11 proceeding; however, 26 U.S.C. § 1399 does not treat a Chapter 11 case any differently from a Chapter 7 case. *See In re Kiesner,* 194 B.R. at 458. As set forth above, the 10th Circuit in *In re Sun-*

*nyside Coal Co.*, under almost identical factual circumstances, held that a bankruptcy estate was liable for Coal Act assessments. *See In re Sunnyside Coal Co.*, 146 F.3d at 1278. Therefore, the Bankruptcy Court relied on relevant authority in making its decision in this case.

## IV.  CONCLUSION

For the reasons stated above, the Bankruptcy Court's decision granting allowance of the Plan's administrative expenses and denying Trustee's objection to the Plan's claim for administrative expenses is **AF-FIRMED.**