**In re Wallace LeRoy GREEN, Debtor.**

**In re Kenneth Lysle GREEN and Jeanne JoAnn Green, Debtors.**

**In re Forrest Lynn GREEN and Hazel Arlene Green, Debtors.**

**In re AGRI–TECH FARMS, a Partnership, Debtor.**

**Bankruptcy Nos. 94–81026, 94–81027, 94–81028 and 94–81029.**

United States Bankruptcy Court, C.D. Illinois.

June 8, 1995.

Barry M. Barash, Galesburg, IL, for debtors.

Robert Lindstrom, Galesburg, IL, for AgriBank, FCB.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Agri–Tech Farms is a partnership consisting of Wallace LeRoy Green, Kenneth L. Green, and Forrest L. Green. On May 13, 1994, the partnership and all three partners filed separate Chapter 11 cases in bankruptcy. In 1994 the farming operations of the partnership generated post petition taxable income which requires the individual partners to pay federal and state income taxes totaling $150,021.00. The problem arises out of the fact the partnership has the cash to pay the taxes, but is not a taxable entity, while the individual partners have the obligation to pay the taxes, but not the cash to do so.

This prompted all four debtors to file a motion seeking authority to have the partnership pay the taxes for the individual partners or to distribute sufficient cash to the individual partners so they can pay the income taxes. They rely on §§ 503 and 105 of the Bankruptcy Code, 11 U.S.C. §§ 503 and 105. Their position is that § 503 permits the court to authorize administrative priorities, including the payment of necessary operating expenses and taxes and that there should be charged against the partnership as an administrative priority an amount equal to the income taxes at the partner level with an authorization to pay them, and that § 105 gives the court power to so order as it gives the court the power to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code.

One of their major creditors, AGRIBANK, FCB, (BANK) expects to receive a substantial payment through the partnership case, which payment would be reduced if the partnership pays the individual partners' income taxes. So the BANK objected to the Debtors' motion. The basis of the objection is that § 503 does not allow the court to authorize the partnership's paying of income taxes incurred by the individual partners and that there cannot be any distribution to the Debtors without first paying the claim of the BANK.

The BANK's objection prompted the Debtors to file a supplemental motion seeking to have the BANK's claim equitably subordinated under § 510(c) of the Bankruptcy Code, 11 U.S.C. § 510(c). They rely on *In re First Truck Lines, Inc.,* 48 F.3d 210 (6th Cir. 1995).[1] The BANK opposes the equitable subordination of its claim for two reasons. First, it did not engage in any inequitable conduct so as to fall within the line of cases which permit subordination if inequitable conduct exists. Second, the application of a second line of cases which permit equitable subordination without inequitable conduct being present is normally limited to situations not present in the cases before this Court.

Three points, which the parties do not dispute, are clear. First, the partnership is not a tax paying entity, the partners are the tax payers. Second, the bankruptcy filing does not change those statuses. Third, under the Uniform Partnership Act as adopted in Illinois, 805 ILCS 205/18, partners are not

---

1. At the hearing, the Debtors stated that their reliance on *In re First Truck Lines, Inc.,* 48 F.3d 210 (6th Cir.1995) was for the proposition that equitable subordination can occur without misconduct and acknowledged that the facts of *First Truck Lines* bear no semblance to those at issue in the present case. At issue in that case was the equitable subordination of a nonpecuniary loss tax penalty claim and the court relied on legislative history which indicated that penalty claims were susceptible to equitable subordination and decisions from other circuits involving prepetition, nonpecuniary loss tax penalties. The court specifically stated it would neither be fair nor just to permit such claims to share, pari passu, with claims based on the extension of value to the debtor. The rationale underlying the court's ruling in *First Truck Lines* simply has no application to the present case at all.

entitled to receive profits until liabilities are satisfied. The partnership agreement tracks the provisions of the Internal Revenue Code and the Uniform Partnership Act. The partnership agreement provides in ¶ 9 that all income is "partnership income", in ¶ 10 that all farm operating expense is to be paid by the partnership, and in ¶ 11 that all personal expenses, including income taxes are to be the responsibility of the individual partners.

The question that has to be asked is whether there is anything in the Bankruptcy Code which permits an alteration of these statutory provisions and contractual agreements. The answer is no.

The Debtors first rely on § 503(b) which provides in part as follows:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:
> >
> > (B) any tax—
> >
> > (i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title;

To be allowed as an administrative expense the taxes must be "incurred by the [partnership] estate". *See In re Felland,* 153 B.R. 835 (Bkrtcy.W.D.Wis.1993) (the court refused to allow administrative status for corporate sales taxes and responsible person withholding taxes in the individual shareholder bankruptcy). Nothing in § 503(b) authorizes the designation of an administrative expense between cases or, absent a substantive consolidation, the transfer of assets or liabilities between cases. The Debtors have cited no authority to support their position, nor has this Court found any.

The Debtors also rely on § 105(a) which provides in part as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This Court is not aware of any authority, nor have the Debtors cited any, which permits § 105(a) to be used to achieve a result, such as the one proposed by the Debtors, which is not contemplated by the Bankruptcy Code. To the contrary, on two occasions the Seventh Circuit Court of Appeals in *Gouveia v. Tazbir,* 37 F.3d 295 (7th Cir.1994), citing the United States Supreme Court in *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), and *In re Lloyd,* 37 F.3d 271 (7th Cir.1994), found that § 105 can only be exercised within the confines of the Bankruptcy Code.

Nor does § 510(c) of the Code provide any basis for relief. Section 510(c) provides as follows:

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
>
> > (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest;

Section 510(c) authorizes equitable subordination of an "allowed claim" to "another allowed claim". Subordination applies to allowed claims within the same case, not between different cases. In the cases before this Court, subordination is not available because the BANK's claim which the Debtors need to subordinate is in the partnership case while the tax claims that must be elevated are in the individual cases.[2]

---

**2.** The BANK has filed claims in all four cases. Tax claims are only proper in the individual cases. Barring substantive consolidation, in order to reach the desired result, the BANK's claim in the partnership case must be subordinated to the tax claims in the individual cases. It would not matter if the BANK's claim were subordinated in the individual cases, because the money to pay the taxes is in the partnership case.

For these reasons the partnership's cash cannot be used to pay the individual partners' income taxes. A similar result was reached in *In re Harbor Village Dev.*, 1994 WL 774514, 1994 Bankr. LEXIS 2020, 95–1 U.S.Tax Cas. (CCH) P50, 032 (Bkrtcy. D.Mass.1994), where the Chapter 11 Trustee petitioned the bankruptcy court for a determination that he was not liable for the payment of any income taxes incurred during the administration of the bankruptcy estate. The Trustee took the position that the income derived from the bankruptcy estate must be used to satisfy the claims of creditors, not the personal obligations of the individual partners. The court agreed with the Trustee, rejecting the general partner's contention that it was patently unfair and inequitable to require the partners to pay the income taxes which accrued during the time of the Trustee's administration, because the partners did not receive any of the profits generated by the partnership. Examining the relevant statutory provisions, the court stated:

> Pursuant to section 346(c)(1) of the Bankruptcy Code and section 1399 of the IRC, the commencement of the Debtor's bankruptcy case did not create a separate federal or state tax entity. Section 346(c)(1) provides in relevant part the following:

>> The commencement of a case under this title concerning a corporation or a partnership does not effect a change in the status of such corporation or partnership for the purposes of any State or local law imposing a tax on or measured by income. Except as provided in this section in section 728 of this title [section 728 applies only in Chapter 7 cases, 11 U.S.C. @ 103(b)], any income of the estate in such case may be taxed only as

though such case had not been commenced.

> 11 U.S.C. @ 346(c)(1). Likewise, section 1399 provides the following: "Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a case under title 11 of the United States Code." 26 U.S.C. @ 1399. Section 1398, which sets forth detailed rules relating to individuals' title 11 cases, provides the following:

>> (a) ... Except as provided in subsection (b), this section shall apply to any case under chapter 7 (relating to liquidations) or chapter 11 (relating to reorganizations) of title 11 of the United States Code in which the debtor is an individual.

>> (b) ... (2) ... for purposes of subsection (a), a partnership shall not be treated as an individual, but the interest in a partnership of a debtor who is an individual shall be taken into account under this section in the same manner as any other interest of the debtor.

> Id. @ 1398.

> Pursuant to the provisions of section 701 of the IRC ... a partnership is not itself subject to [federal] income tax. For tax purposes, a partnership's "taxable income" is allocated to its partners, regardless of whether the partners receive corresponding amounts of cash from the partnership, and the partners pay all the federal and state taxes due upon or charged against such income.

> IRC @ 708(a) provides that a partnership continues for tax purposes until termination. 26 U.S.C. @ 708(a). Termination for tax purposes occurs only if either: "(A) no part of any business, financial operation or venture of the partnership continues to be carried on by any of its partners in a

---

Very early on in the cases, on June 1, 1994, the Debtors filed a motion to consolidate the cases, alleging:

1. The debtors are related.
2. The assets and liabilities of the four debtors are intermingled.
3. The debtors anticipate filing a combined plan.
4. Consolidation would expedite the filing of a plan.

The U.S. Trustee objected, taking the position that the consolidation could be administrative only, because the creditors for each of the debtors were not identical. After a hearing, an order was entered on July 12, 1994, which provided that the cases were consolidated for administrative purposes. Despite that order, the Debtors filed an identical plan in each case which pools all assets and liabilities in each case and shows the payment of the 1994 income taxes to be made on March 1, 1995.

partnership or (B) within a twelve month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits." Id. @ 708(b)(1). Here, neither happened during the tax years at issue, so termination of the partnership did not occur for tax purposes.

[The general partner] relies on 28 U.S.C. @ 960 for the proposition that the Trustee is liable for the taxes. Section 960 provides in relevant part the following: "Any officers and agents conducting business under authority of a United States court shall be subject to all Federal, State, and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation." 28 U.S.C. @ 960. However, section 960 itself does not impose a tax on any person or partnership. Moreover, the Bankruptcy Tax Act of 1980, which added sections 1398 and 1399 to the IRS, was enacted after 28 U.S.C. @ 960. Thus, under principles of statutory construction, the statute that is more recent and specific controls the earlier and more general statute. *North Penn Transfer, Inc. v. Victaulic Co. of Amer.*, 859 F.Supp. 154, 161 (1994).

Under long established principles of partnerships, the partnership is viewed as a conduit; the income generated and taxes due keep their original character as they flow through to the individual partners. Partnerships are not taxable entities and simply file information returns under 26 U.S.C. @ 6031. *See, e.g., Matter of Plaza Family Partnership*, 95 B.R. 166 (E.D.Cal. 1989), quoting *In re Matter of Montgomery*, 532 F.2d 725, 726 (1976). In *Plaza Family*, the district court reversed an order of the bankruptcy court ruling that the use of cash collateral to pay income taxes was not allowable because "a partnership is not a tax paying entity and as such, its income and tax liabilities is divided among the partners ... the tax obligation is the burden of the partners as individuals, and not the partnership." *See also Randolph Products Co. v. Manning*, 176 F.2d 190, 192–93 (3d Cir.1949) (Partnership though required to file a return is merely a tax

computing entity and is not a taxpayer not a taxable entity.) ...

. . . .

[The general partner's] argument that the Trustee's position in this case is patently unfair and inequitable is also without merit. His position that the person with possession and control of the profits of the Shopping Center be obligated to pay the taxes is simply not in accordance with the law. [The general partner] fails to cite any authority that would enable this Court to find that he has a cause of action on any equitable theory.

In *In re Nevin*, 135 B.R. 652 (Bankr. D.Haw.1991), a case dealing with the abandonment of partnership property, the Court determined that the debtors were liable for tax liabilities, using logic that is pertinent here.

It should be noted that the Debtors chose the partnership form of business organization when they formed the ... [business]. If they had selected a corporate form of ownership, they would not be faced with this dilemma that they are now in. They apparently chose the partnership route in order to obtain the tax benefits of partnership, that is, the flow through of gains and losses. It is precisely this tax attribute that they now are attempting to evade. However, having obtained the benefits they must also live with the burdens.

*Id.* at 654.

Contrary to [the general partner's] belief that he derived no personal gain from the income generated by the partnership while in bankruptcy and, therefore, should not be liable for the taxes due on the income, the income will be used to satisfy claims of the Debtor's creditors to whom [the general partner] would otherwise be personally liable. The extinguishment of those obligations will relieve [the general partner] of potential liability and thus inure to his benefit.

The same conclusion was reached by the district court in *In re Miller–Charlton Farms*, 1990 U.S.Dist. LEXIS 10599 (W.D.Mo.1990), on appeal from an order of the bankruptcy court denying the claim of

the partner for payment of her individual income tax liability from the partnership bankruptcy estate. The court stated:

> Section 501 of the Code provides that creditors of the estate may file proof of their claims. Section 502(a) provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interests ... objects." If such objection to a claim is made, § 502(b) requires that such claims be allowed unless, inter alia, "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law ..." § 502(b)(1) (emphasis added).

The debtor in this case is the partnership, not any individual partner. Title 26 (Internal Revenue Code) makes it clear that the partnership can owe no income tax. "A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities." 26 U.S.C. § 701. Since it is the partner who is liable under the Code, her tax debt cannot be enforced against the partnership [debtor]. Thus the tax bill is an "unenforceable claim" within the meaning of § 502(b)(1) and may not be paid out of the estate.

One supposes an argument could be made that even if there is no authority to pay the tax bill as a "claim", it could be characterized as an administrative expense within the meaning of § 503. However, to do so would be incorrect. Administrative expenses are those that are attendant to "running" the estate and most typically include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case ..." § 503(a)(1)(A).

While certain taxes "incurred by the estate" are routinely allowed as administrative expenses, § 503(a)(1)(B)(i), paying the income taxes owed by some third party, taxes which the debtor is not even legally obligated to pay, could hardly be considered proper. No cases are found to support such a proposition.

In summary, jurisdictional questions aside, this Court is of the belief that there is simply no legal means by which the personal taxes of [the general partner] can be paid out of the estate assets of the partnership debtor. The estate is not legally obligated to pay under the Code and to pay such a claim would be inequitable treatment of the creditors with legitimate claims. This Court's opinion would be the same even if the Court found that the confirmation agreement provided for such payoff, which we do not. All other arguments offered by [the general partner] are likewise rejected.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in the Opinion entered this day, IT IS HEREBY ORDERED that:

1. The Motion filed by the Debtors for leave to pay 1994 income taxes filed March 1, 1995, is hereby DENIED.

2. The Amended Motion filed by the Debtors for leave to pay 1994 income taxes and for other relief, filed April 17, 1995, is hereby DENIED.

3. The Supplemental Motion with regard to payment of partners' income taxes, filed April 28, 1995, is hereby DENIED.