In re Roger KIESNER and
Iris Kiesner, Debtors.

Roger KIESNER and Iris
Kiesner, Plaintiffs,

v.

INTERNAL REVENUE SERVICE,
Defendant.

In re Peggy Lee KIESNER, Debtor.

Peggy Lee KIESNER, Plaintiff,

v.

INTERNAL REVENUE SERVICE,
Defendant.

Bankruptcy Nos. 92–23581–
MDM, 92–23582–MDM.
Adv. Nos. 95–2070, 95–2069.

United States Bankruptcy Court,
E.D. Wisconsin.

Jan. 19, 1996.

Gerald J. Mayhew, Milwaukee, WI, for Plaintiffs.

Thomas P. Schneider, Milwaukee, WI, for Defendant.

## *MEMORANDUM DECISION*

M. DEE McGARITY, Bankruptcy Judge.

### *Introduction*

The debtors, Peggy Kiesner and Roger and Iris Kiesner, brought identical adversary proceedings in each of their bankruptcy cases asking that this court determine taxes claimed owed by the IRS were discharged or, in the case of certain taxes owed by another entity, the debtors are not liable.

The parties briefed the issues and presented evidence at trial. The final determination of the dollar amount of tax liability will be left to the parties, which they can calculate based on the legal findings in this decision.

This court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This memorandum decision represents this court's findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052.

### *Facts*

Peggy and Roger Kiesner, brother and sister, were partners in R & R Automotive, an automobile repair business. Iris is Roger's wife. As partners, Peggy and Roger incurred personal liability for substantial federal taxes while operating R & R Automotive. On April 15, 1991, R & R Automotive filed for protection under chapter 11 of the Bankruptcy Code.

The United States subsequently filed tax claims in the R & R Automotive case for federal employment taxes, interest and penalties (Form 941), for federal unemployment taxes, interest and penalties (Form 940), and for late filing of partnership informational returns, interest and penalties (Form 1065). The Kiesners did not file objections to these tax claims.

On December 9, 1991, the R & R Automotive chapter 11 bankruptcy case was converted to a chapter 7 case. A trustee was appointed, and a liquidation of the partnership assets commenced in order to make a distribution to the creditors of the partnership. The trustee's proposed distribution was approved, and distributions were made on or about October 13, 1994. The R & R Automotive bankruptcy case was closed March 1, 1995.

During the pendency of the R & R Automotive bankruptcy, Peggy Kiesner filed a voluntary petition under chapter 7 of the Bankruptcy Code on May 29, 1992. Roger and Iris Kiesner filed a voluntary joint petition on the same date. Because each was a no-asset case, the IRS did not file any claims, although it was listed as a creditor. Discharges were granted to Peggy, Roger and Iris on August 26, 1992.

Peggy, Roger and Iris Kiesner did not file their 1990 and 1991 individual income tax returns prior to the filing of their bankruptcy petitions. Peggy Kiesner filed her 1990 state and federal returns on August 7, 1992, and her 1991 returns on April 1, 1993. Roger and Iris filed their 1990 returns on August 10, 1992, and their 1991 returns on April 19, 1993. Peggy, Roger and Iris timely filed their 1992 returns on April 15, 1993. All of Roger's and Iris' returns were joint returns.

After the discharges were issued in their individual chapter 7 cases, the IRS offset the Kiesners' individual income tax overpayments and applied them to outstanding tax liabilities resulting from their operation of R & R Automotive. The IRS computer system offset the overpayments primarily to R & R Automotive's Form 941 employment tax liability for the quarter ending March 31, 1989:

1. In July 1993, Roger and Iris Kiesner's 1990 individual income tax overpayments in the amount of $3,636 were applied to Form 941 tax liability for tax period ending March 31, 1989.

2. In August 1993, Roger and Iris Kiesner's 1990 individual income tax overpayments in the amount of $160.30 were applied to Form 941 tax liability for tax period ending March 31, 1989.

3. In August 1993, Peggy Kiesner's 1990 individual income tax overpayments in the amount of $625.13 were applied to Form 941 tax liability for tax period ending March 31, 1989.

4. In June 1993, Roger and Iris Kiesner's 1991 individual income tax overpayments in the amount of $583.09 were applied to Form 941 tax liability for tax period ending March 31, 1989.

5. In June 1993, Roger and Iris Kiesner's 1991 individual income tax overpayments in the amount of $691.91 were applied to Form 941 tax liability for tax period ending December 31, 1988.

6. In June 1993, Peggy Kiesner's 1991 individual income tax overpayments in the amount of $2,868 were applied to Form 941 tax liability for tax period ending March 31, 1989.

7. In June 1993, Roger and Iris Kiesner's 1992 individual income tax overpayments in the amount of $1,513 were applied to Form 941 tax liability for tax period ending March 31, 1989.

8. In June 1993, Peggy Kiesner's 1992 individual income tax overpayments in the amount of $985 were applied to Form 941 tax liability for tax period ending March 31, 1989.

The IRS computer system is not designed to, and did not, designate specific portions of the individual income tax overpayments to trust fund or nontrust fund portions of R & R Automotive's employment taxes.

The wages reported by R & R Automotive on its Form 941 for the quarter ending March 31, 1989, were $20,346.96. The tax calculated on that payroll base was $4,902.31, which was composed of $1,846.20 withheld income tax and $3,056.11 gross social security. One-half of the social security amount, $1,528.05, was required to be contributed by

the employer and constituted the nontrust fund portion of the tax. Thus, the trust fund portion of the tax for this period was $3,374.25. The nontrust fund tax, plus the penalty and interest computed to the date of final payment on both the trust fund and nontrust fund portions, amounted to $6,964.73.

On October 13, 1994, the IRS credited to the R & R Automotive account $19,855.67, which it received from the bankruptcy trustee. The bankruptcy payments were applied to the following liabilities:

| Type of Tax | Period | Amount |
|---|---|---|
| Form 941 employment | second quarter 1989 | $6,671.45 |
| Form 941 employment | third quarter 1989 | 238.93 |
| Form 941 employment | first quarter 1991 | 1,147.44 |
| Form 941 employment | third quarter 1991 | 136.67 |
| Form 940 unemployment | 1988 | 2,417.62 |
| Form 940 unemployment | 1989 | 2,939.96 |
| Form 940 unemployment | 1990 | 4,995.54 |
| Form 1065 partnership | 1988 | 323.40 |
| Form 1065 partnership | 1989 | 408.35 |
| Form 1065 partnership | 1990 | 576.31 |
| | | $19,855.67 |

Transcripts[1] provided by the IRS reflected that interest and penalties on the tax liabilities of R & R Automotive continued to accrue between the dates of the filing of R & R Automotive's chapter 11 bankruptcy petition and the distribution to creditors in October 1994. After application of monies received from the R & R Automotive bankruptcy and from the offset of the Kiesners' income tax overpayments, the following tax liabilities remained:

1. Form 941 for tax period ending September 30, 1989: $6,019.18, including $823.74 of accrued but unassessed penalties.

2. Form 941 for tax period ending December 31, 1990: $9,913.47, including $1,367.84 of accrued but unassessed penalties.

3. Form 941 for tax period ending March 31, 1991: $2,409.45, including $450.45 of accrued but unassessed penalties.

4. Form 941 for tax period ending December 31, 1991: $3,972.68, including

1. The IRS transcripts provided a history of the following R & R Automotive accounts: Form 941 tax liability for tax period ending March 31, 1989 through tax period ending December 31, 1991; Form 940 for tax period ending December 31,

$542.44 of accrued but unassessed penalties.

Updated to include accruals through October 31, 1995, the total outstanding liabilities shown on the transcripts amounted to $23,191.80.

Prior to trial, the parties agreed on a number of adjustments to this balance. These included a decrease in federal unemployment tax due to payment of state unemployment taxes. The adjustments also included abatements of interest and possible penalties relating to the above federal tax reduction and a modification of the dates as to which the Kiesners' R & R Automotive liabilities were offset by their income tax overpayments. The IRS has estimated that the Kiesners owe approximately $10,200. Nevertheless, the Kiesners maintain that no outstanding balance is owed because their tax liabilities are either discharged or were not owed at all. Although they concede that trust fund taxes are nondischargeable, the Kiesners insist the amounts claimed owed by the IRS should be reduced by the reapplication to other accounts of monies wrongfully applied to penalties that are dischargeable in their individual cases, or by unlawful additions to taxes. If reallocation of payments and offsets are made, then any remaining unpaid tax liability of R & R Automotive is discharged and is not subject to further collection.

*Law*

1. *Jurisdiction*

■ The IRS contends that this court lacks jurisdiction over debtors' claim because the debtors did not first file a timely administrative claim for refund of the taxes. According to the IRS, a taxpayer may not file a suit for a refund or credit of his taxes unless the taxpayer first files an administrative claim for refund (United States' Trial Memorandum, p. 5). The IRS contends that I.R.C. § 7422(a) supports its position:

1988 through tax period ending December 31, 1991; and Form 1065 for tax period ending December 31, 1988 through tax period ending December 31, 1991.

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).

The debtors, on the other hand, argue that I.R.C. § 7422 does not deprive the court of jurisdiction because they are not seeking a tax refund (Debtors' Trial Brief, p. 6–7). The debtors are instead requesting that the court resolve whether they owe certain taxes, interest and penalties previously assessed by the IRS. Because they are petitioning the court under 11 U.S.C. § 505, the debtors claim that this court has jurisdiction. Section 505(a)(1) provides as follows:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

The Eleventh Circuit was faced with a similar issue in *In re Ryan*, 64 F.3d 1516 (11th Cir.1995). In *Ryan*, the debtors overpaid their income tax and requested that the IRS apply that overpayment to their unpaid liability for the previous tax year. The IRS, however, applied the overpayment to the debtors' liabilities for a different year. The debtors brought an adversary proceeding against the United States and asked the court to determine their tax liability. The bankruptcy court issued a turnover order under 11 U.S.C. § 542, requiring the IRS either reallocate the overpayment or pay the amount to the trustee. On appeal, the government argued, among other things, that the bankruptcy court lacked jurisdiction to

issue the turnover because the debtors had not filed for a tax refund.

The Eleventh Circuit considered both 11 U.S.C. § 505(a)(1) and 26 U.S.C. § 7422(a) when it concluded that an income tax return may constitute a claim for refund. 64 F.3d at 1521. The court noted that, under the Treasury Regulations, the tax return "must state the 'essential requirements' of the refund demand." *Id.* Because the debtors' return contained the source and amount of the overpayment, the circuit court concluded the IRS was provided with the necessary information to determine the refund claim. *Id.* at 1521–22 ("[T]he fact that the IRS subsequently used the [debtors'] claimed overpayment to offset their 1986 tax liability demonstrates that the IRS was provided with all the information necessary to examine and resolve the [debtors'] refund claim."). The *Ryan* court held, in essence, the return was the functional equivalent of a taxpayer's claim as required by IRC § 7422(a).

Here, the debtors are requesting a credit, not payment of a refund, but the reasoning remains the same. Like the debtors in *Ryan*, the Kiesners have asked that this court reapply their tax overpayments to non-dischargeable tax liabilities. It is uncontested that the IRS offset the Kiesners' individual income tax overpayments and applied them to outstanding tax liabilities, some of which would have been discharged. A determination of whether reallocation is proper is necessary to determine how much tax is due and how much was discharged. Since the debtors are asking for credits for particular taxes due, and the necessary returns have been filed to allow calculation of those credits, this bankruptcy court has jurisdiction to determine the tax owed by the debtors.

### 2. *Debtors' Tax Liabilities*

A. Are the debtors liable for Form 941 employment tax, penalties and interest for the fourth quarter of 1991?

█ As was set forth above, R & R Automotive filed for chapter 11 bankruptcy relief on April 15, 1991, and the Kiesners operated R & R Automotive as debtors-in-possession until the case was converted to chapter 7 on December 9, 1991. According to the debtors,

wages were paid following the conversion to chapter 7 to insure completion of work in progress. At trial, it was established that the trustee did not authorize or consent to the payment of wages without depositing the related taxes. The trustee was under the erroneous impression that Roger Kiesner was completing work gratis in order to facilitate collecting accounts receivable, while in fact Roger had retained and paid a former employee to assist him. The Form 941 employment tax for this period was not paid. Consequently, the tax and related interest and penalties have been assessed against the Kiesners.

The Kiesners dispute the assessment and claim that the taxes, interest and penalties for the fourth quarter of 1991, which accrued during the R & R Automotive bankruptcy case, are chapter 7 administrative expenses of R & R Automotive under 11 U.S.C. § 503(b)(1)(A). The Kiesners claim that, as obligations of the R & R Automotive estate, the taxes are not their personal obligations.

The IRS insists that the Kiesners, having paid wages after the conversion of the R & R Automotive bankruptcy to chapter 7, cannot now claim that the taxes on such wages are not their responsibility. The IRS points out that a chapter 11 debtor who pays postpetition wages to employees is responsible for the employment taxes on such wages. *In re Professional Security Services, Inc.*, 162 B.R. 901, 903 (Bankr.M.D.Fla.1993). Additionally, the IRS contends that because the wages were paid without the knowledge and consent of the chapter 7 trustee, the taxes, interest and penalties are not administrative expenses in R & R Automotive.

Whether the taxes due are administrative expenses in R & R Automotive is, of course, academic. The R & R Automotive funds have been entirely distributed without an administrative claim for this period having

been filed. Furthermore, the individuals' cases are no-asset cases, making priority immaterial in those cases. More to the point, are the Kiesners' personally liable for the nonpayment of these taxes, or does the discharge injunction apply?

▪ Partnership income continues to be taxed as though a bankruptcy case had not been commenced. *See* 11 U.S.C. § 346(c)(1); 26 U.S.C. § 708(a). For purposes of federal income tax, the commencement of a bankruptcy case by either a partner or a partnership does not alter the taxpayer status of a partnership. 11 U.S.C. § 346(c)(1); 26 U.S.C. § 1399; *see also In re Green*, 182 B.R. 532, 535 (Bankr.C.D.Ill.1995). Section 1399 of the Internal Revenue Code provides the following: "Except in any case to which section 1398 applies,[2] no separate taxable entity shall result from the commencement of a case under Title 11 of the United States Code." 26 U.S.C. § 1399. That section does not differentiate between a chapter 11 case and a chapter 7 case.

▪ I.R.C. § 708(a) provides that, for federal tax purposes, a partnership continues to exist separate from its bankruptcy estate, until the partnership terminates. 26 U.S.C. § 708(a). Termination for tax purposes occurs only if either: "(A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or (B) within a 12–month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits." 26 U.S.C. § 708(b)(1). Because neither happened during the period that the taxes at issue in this case accrued, termination of the partnership did not occur for tax purposes when the chapter 11 petition was filed or when the case was converted to one under chapter 7. Because no separate taxable entity is created for partnerships that file for bankruptcy under I.R.C. § 1399, the part-

---

**2.** Section 1398, which sets forth detailed rules relating to individuals' title 11 cases, provides:
(a) ... Except as provided in subsection (b), this section shall apply to any case under chapter 7 (relating to liquidations) or chapter 11 (relating to reorganizations) of title 11 of the United States Code in which the debtor is an individual.

(b) ... (2) Section does not apply at partnership level.—For purposes of subsection (a), a partnership shall not be treated as an individual, but the interest in a partnership of a debtor who is an individual shall be taken into account under this section in the same manner as any other interest of the debtor.
26 U.S.C. § 1398.

ners of R & R Automotive continued to be liable for all taxes incurred by the debtor.

### B. Are debtors liable for the penalties assessed for failure to file Form 1065 Informational Partnership Returns?

■ The Kiesners contend that the penalties and interest assessed against them for failure to file partnership informational returns for 1989 and 1990 are dischargeable, citing 11 U.S.C. § 523(a)(7)(A).[3] The Kiesners acknowledge that government nonpecuniary loss penalties, which include penalties for late filing of Form 1065 partnership returns, are nondischargeable under § 523(a)(7), unless an exception to this general exception to discharge applies. Also, the penalties in question are for returns due within three years of filing the Kiesners' petitions. Nevertheless, they contend that since the penalties do not relate to a tax specified in § 523(a)(1), § 523(a)(7)(A) applies, and the debt is dischargeable.

The IRS, on the other hand, argues that a penalty for failure to file information returns is not dischargeable, citing *Ferrara v. Department of Treasury (In re Ferrara)*, 103 B.R. 870, 873–74 (Bankr.N.D.Ohio 1989), as support for its position.

■ This court is persuaded by the *Ferrara* court's interpretation of § 523(a)(7), which excepts penalties "payable to and for the benefit of a governmental unit" from discharge generally, and by that court's interpretation of the exceptions to the penalty exception, subsections (A) and (B). The *Ferrara* court considered the language of the provision, which it found to be confusing and ambiguous, in light of the legislative history of § 523, when it concluded that the debtor's tax penalty was nondischargeable. The penalty in *Ferrara* was the same type of penalty present in this case. Section 523(a)(7)(A) applies only to a penalty "relating to a tax,"

and the type of penalty in *Ferrara* and in this case does not relate to a tax. The Form 1065 return only provides information because the partnership income is taxed to the individual partners; no tax is due upon filing the return. Thus, 11 U.S.C. § 523(a)(7)(A) does not apply.

The exception to discharge, if there is one in this case, must be determined by reference to 11 U.S.C. § 523(a)(7)(B). That subsection applies to "other than a tax penalty ... imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition." 11 U.S.C. § 523(a)(7)(B). Under this exception to the general exception of penalties under 11 U.S.C. § 523(a)(7), tax penalties imposed more than three years before filing are discharged. The penalty in this case is imposed with respect to a return due *after* three years before the date of filing of the petitions. Since this penalty does not fit within the second exception to the exception, § 523(a)(7)(B), it is subject to the general exception of § 523(a)(7) and is not dischargeable.

Therefore, this court holds that the penalties and interest assessed against R & R Automotive for failure to file informational returns are excepted from the discharge of the individual partners.

### C. Are the individual debtors liable for the accrual of interest and penalties on R & R Automotive's Form 941 employment and Form 940 unemployment tax liabilities, and the accrual of penalties and related interest for the late filing of R & R Automotive's Form 1065 partnership informational return between the filing of R & R Automotive's chapter 11 bankruptcy petition and the closing of the case?

■ The Kiesners claim that the late filing and late payment penalties accruing during the pendency of the R & R Automo-

---

**3.** § 523. Exceptions to discharge.
 (a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

 . . . . .

 (7) to the extent such debt is for a fine, penalty, or forfeiture payable to or for the benefit of a governmental unit, and is not

compensation for actual pecuniary loss, other than a tax penalty—
(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;
11 U.S.C. § 523(a)(7).

tive bankruptcy are unlawful additions to tax in violation of 26 U.S.C. § 6658. The Kiesners have requested that the court order the IRS to reallocate funds applied to these allegedly unlawful additions to tax to priority taxes reflected in the IRS's March 16, 1992 proof of claim, which are nondischargeable in the debtors' individual cases.

26 U.S.C. § 6658 provides:

§ 6658. Coordination with title 11.

(a) Certain failures to pay tax.—No addition to the tax shall be made under section 6651, 6654, or 6655 for failure to make timely payment of tax with respect to a period during which a case is pending under title 11 of the United States Code—

(1) if such tax was incurred by the estate and the failure occurred pursuant to an order of the court finding probable insufficiency of funds of the estate to pay administrative expenses, or

(2) if—

(A) such tax was incurred by the debtor before the earlier of the order for relief or (in the involuntary case) the appointment of a trustee, and

(B)(i) the petition was filed before the due date prescribed by law (including extensions) for filing a return of such tax, or

(ii) the date for making the addition to the tax occurs on or after the day on which the petition was filed.

(b) Exception for collected taxes.—Subsection (a) shall not apply to any liability for an addition to the tax which arises from the failure to pay or deposit a tax withheld or collected from others and required to be paid to the United States.

The IRS, however, asserts that I.R.C. § 6658 does not apply to all of the penalties and interest disputed by the Kiesners. According to the IRS, I.R.C. § 6658 only applies to penalties, not interest. Additionally, Form 1065 partnership penalties are not governed by I.R.C. § 6658 because such penalties are imposed under I.R.C. § 6698, not

those sections required by I.R.C. § 6658. The IRS further points out that I.R.C. § 6658(b) establishes that the provision does not apply to the trust fund portion of employment taxes.

The IRS is correct on all three points. Various courts have consistently held that I.R.C. § 6658 pertains to penalties, and not interest. *See, e.g., United States v. Benson,* 88 B.R. 210, 212–13 (W.D.Mo.1988) (applying *Bruning v. United States,* 376 U.S. 358, 361, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964)). The penalties assessed for failure to file Form 1065 partnership informational returns are not effected by I.R.C. § 6658 either, because those penalties are imposed under I.R.C. § 6698. Finally, I.R.C. § 6658 expressly provides that an insufficiency of funds does not excuse a taxpayer from liability for the failure to pay or deposit a tax withheld or collected from others and required to be paid to the IRS. 26 U.S.C. § 6658(b); *see also In re Irvin,* 129 B.R. 187 (W.D.Mo.1990); *In re Fox,* 130 B.R. 571, 574 (Bankr.W.D.Wash.1991).

The IRS also takes issue with the scope of the pendency of the bankruptcy. The Kiesners claim that penalties accruing from "April 15, 1991 to March 1, 1995" are improper. The IRS maintains that the date of the distribution to creditors, not the date of the closing of the bankruptcy, defines the scope of the pendency of the bankruptcy under I.R.C. § 6658. It is not necessary to reach this issue since the IRS is entitled to collect penalties and interest during the pendency of the R & R Automotive case.

Finally, the IRS notes that the Kiesners have sought to avoid additional categories of penalties not governed by I.R.C. § 6658. The IRS explains that the penalties for late payment of employment taxes for the fourth quarter of 1991 do not meet the requirements of I.R.C. § 6658. The penalties are not improper under I.R.C. § 6658(a)(1) because the failure to pay taxes did not "occur[ ] pursuant to an order of the court finding probable insufficiency of funds of the estate to pay administrative expenses." Furthermore, because I.R.C. § 6658(a)(2) only applies to postpetition penalty accruals on

*prepetition* tax liabilities, the penalties are not improper under subsection (a)(2) either.

### 3. *IRS's Allocation of Debtors' Overpayments*

The relative application of the funds applied between trust fund and nontrust fund accounts is another source of dispute in this chapter 7 case. The IRS applied monies received from the R & R Automotive bankruptcy and the Kiesners' individual income tax overpayments to outstanding tax liabilities resulting from their operation of R & R Automotive. The IRS offset these payments against both trust fund and nontrust fund liabilities of R & R Automotive. The Kiesners contend that the IRS must apply disbursements consistent with their own proof of claim and the statement of claims of the R & R Automotive trustee (Kiesners' Response, p. 4). The trustee's statement of claims shows how the IRS' distribution in the R & R Automotive case was calculated, and the Kiesners contend that the distribution must be applied only to the tax periods and returns used in determining its total distribution. Also, because some of the assessed tax liabilities were illegal, the Kiesners maintain that the IRS should be ordered to reapply the payments allocated to the illegal assessments. Finally, the Kiesners believe the income tax overpayments and monies from the R & R Automotive bankruptcy distribution should be applied to tax obligations that are nondischargeable in their individual cases.

As set forth above, this court has found the IRS' assessment of the Kiesners' tax liabilities as they relate to R & R Automotive proper. Thus, the only remaining issue is whether the allocations were appropriate as well.

"Trust fund" taxes are funds employers withhold from their employees' paychecks representing employees' personal income taxes and Social Security taxes. 26 U.S.C. §§ 3102(a), 3402(a). Federal law requires employers to hold these funds in trust for the United States. 26 U.S.C. § 7501(a). Should employers fail to pay trust fund taxes, the government may collect an equivalent sum from the officers or employees responsible for collecting the tax. 26 U.S.C. § 6672. To ensure that payment to the federal government is made, liability under I.R.C. § 6672 is not dischargeable in bankruptcy. *See* 11 U.S.C. §§ 523(a)(1)(A), 507(a)(7)(C).

 Generally, whether or not a debtor is entitled to designate the tax liability to which the payments will apply depends on whether the payment to the IRS is voluntary or involuntary; a debtor may allocate voluntary but not involuntary payments. *Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983). An involuntary payment is generally defined as "'any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.'" *United States v. Pepperman,* 976 F.2d 123, 127 (3d Cir.1992) (quoting *Amos v. Commissioner,* 47 T.C. 65, 69, 1966 WL 1102 (1966)). Several courts have concluded that payments made in the bankruptcy context are involuntary. *See, e.g., Pepperman,* 976 F.2d at 127; *In re Optics of Kansas, Inc.,* 132 B.R. 446, 448 (Bankr. D.Kan.1991); *In re DuCharmes & Co.,* 852 F.2d 194, 196 (6th Cir.1988). Consequently, the payments made to the IRS in the course of the R & R Automotive bankruptcy are involuntary payments. As such, the debtors are not entitled to designate which of the R & R Automotive tax liabilities the payments are applied to.

 If the debtors were allowed to designate how the R & R Automotive bankruptcy distributions and their income tax overpayments were allocated, the debtors' tax liabilities would not be satisfied in full. Some of R & R Automotive's tax liabilities would not be satisfied, but the individual debtors who were also liable would discharge these same liabilities. This concern was expressed by the district court in *In re Suburban Motor Freight, Inc.,* 161 B.R. 640, 643 (S.D.Ohio 1993), where the court refused to reallocate the IRS' designation of chapter 7 payments for the benefit of the sole owner of the corporate debtor. The court noted that, pursuant to the Supreme Court's pronouncement in *United States v. Energy Resources Co.,* 495 U.S. 545, 110 S.Ct. 2139, 109

L.Ed.2d 580 (1990), the bankruptcy court is empowered to designate involuntary payments to the trust fund liabilities owed by the debtor *in a chapter 11 proceeding.* *Suburban Motor Freight,* 161 B.R. at 643. In *Energy Resources,* the Supreme Court concluded that trust fund obligations may be offset by nonvoluntary payments when the bankruptcy court determines that such application is necessary to the success of a chapter 11 reorganization plan. 495 U.S. at 549–50, 110 S.Ct. at 2142–43. However, payments made pursuant to a plan of reorganization are substantially different from those made in the chapter 7 context. Furthermore, payments allocated in accordance with the self interest of an individual taxpayer who is also personally liable (and who may or may not later become a bankruptcy debtor), rather than subject to the court's scrutiny on a case-by-case basis as was held in *Energy Resources,* would be contrary to the policy favoring payment of taxes to the greatest extent possible.

In *Suburban Motor Freight,* the court explained why the designation of tax payments in chapter 7 cases is unfavored as a matter of policy:

> Where a Chapter 7 liquidation is involved, debtor rehabilitation and other concerns attendant to a successful reorganization plainly do not inure. Moreover, while trust fund taxes technically are not dischargeable in bankruptcy, a corporate dissolution has the practical effect of discharging the corporate debtor from unpaid tax liabilities. Thus, unlike the situation presented in *Energy Resources,* permitting the IRS in a Chapter 7 proceeding to allocate debtor payments to non-trust fund liability does not provide the government an *added* assurance that its tax claim will be satisfied. Rather, IRS discretion may be one of the few protections which the government possesses, since "[t]here is far less assurance in a Chapter 7 proceeding that the corporate debtor will satisfy its tax debt in full."

*Suburban Motor Freight,* 161 B.R. at 644 (citations omitted).

As did the district court in *Suburban Motor Freight,* this court finds that there has been no showing that allocating the R & R Automotive bankruptcy payments is necessary to an "appropriate bankruptcy purpose." *Energy Resources,* 495 U.S. at 546, 110 S.Ct. at 2140. Although the Kiesners would be benefitted by a reduction in the IRS' claim against them, such benefit would be to the detriment of the IRS, a preferred creditor. Allocating the partnership chapter 7 payments to trust fund taxes—which are nondischargeable obligations in the partners' individual cases—would award the Kiesners rights and privileges which they do not otherwise possess. *See Suburban Motor Freight,* 161 B.R. at 644.

■ Likewise, in accord with *United States v. Ryan (In re Ryan),* 64 F.3d 1516 (11th Cir.1995), the Kiesners' income tax overpayments shall not be reallocated to nondischargeable tax liabilities. In *Ryan,* the Eleventh Circuit concluded that the IRS has not extended its voluntary payment rule to overpayments. *Id.* at 1523. The court noted that I.R.C. § 6402(a) and Treasury Regulations promulgated under that section clearly give the IRS the discretion to apply overpayments to any of the taxpayer's tax liabilities. *Id.; see also Kalb v. United States,* 505 F.2d 506 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). Because the IRS has the discretion to designate the application of overpayments among the Kiesners' various tax liabilities, this court will not disturb their allocations.

### Conclusion

For the reasons stated above, this court finds in favor of the United States in all legal issues disputed in this proceeding. Accordingly, the debtors' request for reallocation of the distribution from the R & R Automotive case and the debtors' overpayments is denied.

An order consistent with this decision will be entered.

### ORDER DISMISSING COMPLAINTS

For the reasons stated in the court's memorandum decision on this date, it is ORDERED:

1. This court has jurisdiction to determine tax owed by the debtors pursuant to 28 U.S.C. § 1334(b) and 11 U.S.C. § 505;

2. The debtors were individually liable for taxes, penalties and interest imposed by reason of the operations of R & R Automotive, a partnership, for Form 941 taxes and Form 940 taxes, and continue to be liable for said taxes, penalties and interest to the extent such taxes remain unpaid.

3. The debtors were individually liable for penalties imposed for failure to file timely Form 1065 Informational Partnership Returns for R & R Automotive.

4. Payments of taxes from the R & R Automotive chapter 7 bankruptcy case and from offsets of overpayments of the debtors' individual taxes will not be reallocated to accounts, other than to those previously allocated by the defendant, for which the debtors remain individually liable.

5. The plaintiffs' complaints are dismissed.